## Case No. 16,848.
### VANDOVER v. WILMOT.
[10 Ben. 223.] [1]
District Court, S. D. New York.  Jan., 1879.

BILL OF LADING—DEMURRAGE—AGENT.

1. V., the master and owner of a canal-boat at Oswego, employed F. & Co. to procure for him a cargo, and F. & Co. arranged with H. R. & Co., the proprietors of an elevator, to give the boat a load of grain for New York. F. & Co. gave V. an order on H. R. & Co. for the grain and he went to the elevator and loaded his boat. F. & Co. then made out a bill of lading in two parts, which were signed by V. and by F. & Co., each keeping one part. It consigned the cargo to W. in New York, and authorized him to detain the boat at the rate of $3.00 a day for thirty days, and thereafter at the rate of $2.00 a day till the 1st of April, and from that time demurrage was to be allowed at the rate of 2½ per cent. per day on the freight. After V. had left with his boat, F. & Co. received from H. R. & Co. blank forms of bills of lading, which differed from the others as to the rate of demurrage after the 1st of April. F. & Co. filled up and signed these bills, naming H. R. & Co. as shippers, and sent them to H. R. & Co. and they forwarded one of them to W., to whom they consigned the grain. W. never received the bill of lading which V. had signed and delivered to F. & Co., because they had sent it to S., to whom they had made the freight and demurrage payable, as security for advances made by them to V. The boat not having been discharged till April 16th, V. filed a libel against W. to recover demurrage from April 1st, according to his bill of lading. The difference between the two bills of lading was accidental: Held, that the first bill of lading must be held to be the contract between the parties and that W. should have been put on inquiry as to the contract, from the fact that his bill of lading did not purport to be signed by the master or by any one authorized to bind the boat.

2. V. was entitled to recover the demurrage claimed.

[This was a libel in personam by John N. Vandover against John Wilmot.]

W. R. Beebe, for libelant.
E. T. Wood, for respondent.

CHOATE, District Judge. This is a libel in personam by the master and owner of a canal-boat, against the consignee of the cargo, for demurrage, pursuant to the terms of the bill of lading. The libellant being at Oswego with his boat, employed there the firm of B. C. Frost & Co. to procure for him a cargo of grain, paying them a commission therefor. Frost & Co. made arrangements

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

with Hagamon, Rundell & Co., the proprietors of an elevator in Oswego, to give the libellant's boat a load of grain for New York. They gave the libellant an order on Hagamon, Rundell & Co. for the grain, and he went there and loaded his boat. Frost & Co. then prepared and presented to the libellant a bill of lading in two parts, which were signed by the libellant and by Frost & Co. The libellant retained one and left the other with Frost & Co. This bill of lading named Frost & Co. as the shippers. It made the freight and demurrage payable to one Sargent, in New York, for the security of Frost & Co., who advanced money to the libellant for his expenses in reaching New York. The consignee named was the respondent, Wilmot. Frost & Co. had no interest in the cargo. Hagamon, Rundell & Co., who were the shippers and consignors to the respondent, were acting as agents for the owners of the grain. With this bill of lading, which is the one on which the suit is brought, the libellant proceeded on his voyage to New York. By its terms, the consignee could detain the boat at the rate of three dollars a day for thirty days and thereafter at the rate of two dollars a day till the 1st of April, 1873. and from that time demurrage was to be allowed at the rate of 2½ per cent per day on the freight. Soon after the libellant left with his boat, Frost & Co. received from Hagamon, Rundell & Co. blank forms of bills of lading, differing from that signed by the libellant in respect to the demurrage, giving the privilege of detaining the boat without limit of time, at the rate of two dollars a day after the first thirty days. Frost & Co. filled up and signed this bill of lading in two parts, naming Hagamon, Rundell & Co. as the shippers, and delivered them to Hagamon, Rundell & Co. One of these bills of lading Hagamon, Rundell & Co. forwarded with a letter to the respondent, to whom they consigned the grain. The respondent never received the first bill of lading, that signed by the libellant. The one retained by Frost & Co. had been forwarded by them to Sargent. The boat was detained till the 16th of April, the respondent having no knowledge that the libellant had signed or given a bill of lading differing from that sent to him by Hagamon, Rundell & Co. until about the 1st of April, when he had paid most of the freight and the demurrage up to that time. The suit is to recover the difference in demurrage between the two bills, being about eight dollars a day, from April 1st to April 16th. It appeared by the testimony of Mr. Frost, called as a witness by respondent, that the difference in the two bills was accidental; that there was no express agreement prior to the signing of the first bill of lading between them and the libellant as to demurrage, nor any conversation or understanding between them and Hagamon, Rundell & Co. on the subject; that when the second bill of lading was signed by Frost & Co., they did not observe the difference between the two; that the first bill of lading was in the form usually employed by Hagamon, Rundell & Co. in making their shipments; that the form of the second bill of lading had been sometimes used, but that this clause as to demurrage, so far as it differed from the first bill of lading, had been inadvertently introduced, so far as Hagamon, Rundell & Co. were concerned. It appeared by the testimony of the respondent that he had had prior consignments from Hagamon, Rundell & Co., and received from them bills of lading in the form of the second bill of lading.

It is claimed by the respondent that the first bill of lading, that sued on, is not binding on him; that Frost & Co. were not the shippers; that they were acting in this transaction merely as agents of the libellant; that the only bill of lading, if any, which had any binding force, is the second bill of lading, under which the respondent received the consignment; that the suit cannot be maintained for a quantum meruit, if there was no binding bill of lading, because it is based on an express contract, the first bill of lading. But I think upon the proofs, the first bill of lading entitled the libellant to recover. The libellant knew only Frost & Co. as the parties through whom he received the cargo. They were evidently entrusted by the shippers. Hagamon, Rundell & Co., to make arrangements for the shipment with the master of the boat. They stood more in the position of brokers between the boat and the shippers. than in the position of mere agents of the master. They were his agents for procuring a load. but having found a shipper, they acted for the shipper in making an agreement with the master as to the terms on which it should be transported. Frost testified that it was customary for them in such cases, to give the master a memorandum as to freight, consignee, etc., on which he started on his voyage, and afterwards to make out and forward a formal bill of lading signed by them. Possibly, if the master sailed with such a memorandum and without signing a bill of lading, an authority might be implied from the circumstances for Frost & Co. as his agents, afterwards to sign and forward a bill of lading, but that is not this case. The bill of lading signed by the libellant, was in all respects a formal and complete bill of lading. It fixed the terms of carriage and demurrage. It left nothing which usually forms part of such an instrument to be agreed upon. And the whole matter of agreeing on the terms of the contract had been clearly left by the shippers to Frost & Co., who, with the libellant, signed this bill of lading. It is clear therefore, that Frost & Co. had no authority to alter its terms or to make a new contract without the consent of the libellant, and it was the contract between the libellant and the shippers, Hagamon, Rundell & Co., and it appears by the testimony of Frost, that there was no mis-

take in making it. It was, and the second bill of lading was not, the contract intended by the parties to be made, and in accordance with the form used by Hagamon, Rundell & Co. The fact that Frost & Co. were named in it as shippers, is immaterial. In a sense, they were the shippers, as agents for Hagamon, Rundell & Co. Then, as to the respondent, although he had not in fact seen the true and only bill of lading, and the paper received by him purporting to be such was void, not being signed by the master nor by his authority, yet he received the cargo, and could, on inquiry, have seen the bill of lading. It should have put him on inquiry that the paper he had was not signed by the master, nor by any one who, on its face, appeared to have the master's authority to sign it. If he trusted in an instrument signed by a stranger, with no apparent authority to bind the master or owner of the boat, it was his own fault; and the libellant should not suffer therefrom. As he accepted the consignment of the cargo without inquiry as to the terms of the contract between the boat and the consignor, he thereby assented to the terms of that contract, whatever it was, and is bound to pay the freight and demurrage accordingly.

Decree for libellant with costs.